Edward R. Kingsbury vs. Flora H. Beeler.

Same vs. Same.

York.    Opinion November 23, 1921.

*A line between two parcels of real estate both of which originally were owned by
the same party if fixed and agreed to by such original owner, is the true line
between subsequent and different owners of such parcels, and the lack
of knowledge on the part of such subsequent owners of the existence
of monuments is unimportant.*

Plaintiff's title originated from the same source as defendant's.  The deeds
to the various members of the family of Nathaniel Brooks reserving to him-
self in each one a life interest, in addition to the fact that from time to time
he lived in the family of each grantee and actually benefitted by the reserva-
tion, his ownership and control of the entire tract for more than thirty years,
and the ownership and control of plaintiff's land for substantially forty years,
the middle lot with his occupation and control and the extent thereof known
to all concerned in the other lots, leads to but one conclusion, namely,—that
the westerly side line of the middle lot, or the lot now owned by plaintiff,
was as described in the deed from Nathaniel Brooks to Martha A. Brooks.

On report.    Two actions tried together, the first being a real
action to determine title to certain real estate situate in the town of
York in the County of York, and the second action is to recover
damages for trespass committed by defendant.    After the testimony
was completed and the evidence all in, by agreement of the parties
the case was reported to the Law Court for its determination upon
so much of the evidence as was admissible.    Judgment for plaintiff
in both cases, and damages assessed in the trespass case in the sum of
$25.00.    ·

Case is stated in the opinion.

*E. P. Spinney,* for plaintiff.

*Ray P. Hanscome,* for defendant.

Sitting:   Cornish, C. J., Spear, Hanson, Philbrook, Morrill,
Wilson, JJ.

Hanson, J.    Two actions tried together, the first a real action,
the latter an action of trespass, and both before the court on report.

The only issue in the cases necessary to be dealt with is the location of the true line between the parties to the actions.

So far as the testimony discloses, the record history of the lands in question commences January 5, 1831, when Ebenezer Littlefield conveyed to Nathaniel Brooks "two lots of land laying in said York . . . . bounded by the road leading to bald head, six rods on the road, running back twenty rods from the road by Staples land, the small lot laying six rods from the other, more or less." It is not disputed that by the above named deed Nathaniel Brooks acquired all the lands comprising the three lots delineated upon the court surveyor's plan, and which are herein substantially reproduced.

It is deemed to be advisable, in view of the dates of execution appearing upon the various deeds, to mention first the contention of the defendant.

It is conceded that until the year 1855, Nathaniel Brooks owned all the land comprising the present three lots designated on the plan. On March 26, 1855, he conveyed the east lot to his son Nathaniel, Jr., and on January 6, 1866, Nathaniel Brooks, Sr., was again owner of the entire tract. On that date Nathaniel Senior executed a deed to his son George Brooks of "a certain lot of land with a dwelling house thereon, situated in York and bounded as follows, viz.: the said lot of land containing one half acre more or less, on the south and west and north by land belonging to William Norton's heirs, late of York deceased, and on the east by land of the said Nathaniel Brooks. I hereby reserve the use and improvement of the said dwelling house and land during my natural life." This deed was not recorded until November 12, 1870. The defendant acquired title to the above described land and buildings thereon by a deed from the administrator of Martha Brooks, widow of George Brooks, by deed dated December 15, 1904, and by deed from the heirs of George Brooks, dated December 16, 1905.

While the defendant thus acquired title in 1905, she did not occupy the house until 1909, in the meantime renting the same. Under these deeds the defendant claims to own the land between the lines marked "A" and "B" upon the plan. On this strip of land she has caused a cess-pool to be placed.

The action of trespass was brought to recover damages for the excavating and maintaining such cess-pool.

The plaintiff's title originated from the same source as defendant's. He claims under the following deeds. On July 26, 1866, six months and twenty days after the first deed in the defendant's chain of title, Nathaniel Brooks executed a deed to his daughter-in-law Martha A. Brooks, of Wells in the County of York, of "two certain lots of tillage land situated in the towns of York and Wells, together with all the buildings thereon, bounded as follows, viz: beginning at the southerly corner to a stone in the wall by the old road, and from thence running up about a west course by land owned by the heirs of William Norton late of York deceased, to George Brooks land and to a large stone in the wall with a hole drilled in said stone, and from thence running about a north course and running two rods distance

from the east end of George Brooks dwelling house on a parallel line to a large ledge with a hole drilled in the same, and from thence running about an east course by land owned by the heirs of William Norton, deceased, to the old road & from thence running west by the old road to the first mentioned bounds containing one acre be it more or less." This deed was duly recorded July 27, 1866. Martha A. Brooks reconveyed the same to Nathaniel Brooks November 26, 1870. January 25, 1875, Nathaniel Brooks conveyed the same to Lyman Staples, and on September 23, 1909, the plaintiff acquired the property marked "Kingsbury" on the plan by deed from Bertha H. Keyes, heir at law of Lyman Staples.

The description in the two last named deeds is by lots named and abutting land and lends no aid in solving the question presented. Inasmuch as no claim by adverse possession is set up by either side, the oral testimony presented, standing alone, is of little assistance as well. But when the deed of Nathaniel Brooks to Martha A. Brooks is considered, together with the oral testimony and the circumstances in the case, the solution of the question as to the true line is simplified, and the conclusion inevitable. The deeds to the various members of the family of Nathaniel Brooks reserving to himself in each one a life interest in addition to the fact that from time to time he lived in the family of each grantee and actually benefitted by the reservation: his ownership and control of the entire tract for more than thirty years, and the ownership and control of the plaintiff's land for substantially forty years, the middle lot with his occupation and control and the extent thereof known to all concerned in the other lots, leads to but one conclusion, namely,—that the westerly side line of the middle lot, or the lot now owned by the plaintiff, was as described in the deed from Nathaniel Brooks to Martha A. Brooks; in other words, from "a large stone in the wall with a hole drilled in said stone, and from thence running about a north course and running two rods distance from the east end of George Brooks dwelling house on a parallel line to a large ledge with a hole drilled in the same, and thence running east," etc., etc.

The deeds with the oral testimony are sufficient to warrant this conclusion, without reference to the legal effect of the unrecorded deed from Nathaniel Brooks to George Brooks, dated January 6, 1866, which deed was not recorded until November 12, 1870. With this record in the case, the conclusion that the plaintiff owns to the

line marked "A" on the plan is imperative, because it is supported by the law and the evidence in the case.

The meagre description in all the deeds save the deed of July 26, 1866, gave rise to the general and continued ignorance as to the location of the true line on the part of all concerned until within seven or eight years before these actions were commenced.

In the progress of the case it became necessary to have a surveyor appointed by the court to assist in locating the true line between the parties. His report has been of great assistance, particularly so as he discovered the drill holes marking the north,—west and south-west corners of the plaintiff's land, as described in the deed of July 26, 1866, above referred to. The drill holes could not have been made without the knowledge of all the occupants in the dwelling of George Brooks, and it is unimportant that none of the owners of the various lots in the intervening years knew of the existence of the drill holes. It was the line fixed and agreed to by the original owner, and is necessarily the true line now.

The entry in both cases will be,

> *Judgment for the plaintiff, and*
> *in the trespass case damages*
> *to be assessed in the sum of*
> *$25.00.*